---
Jenness *v.* Berry.
---

---

## JENNESS & a. *v.* BERRY & a.

Where there was a controversy as to the terms of a contract which was alleged on the part of the plaintiff, and denied on the part of the defendant, to have been made in writing; and a witness, called by the defendant to state its terms, testified that it was not in writing, the plaintiff has no right to interrupt the course of the trial by cross-examining such witness, and introducing other evidence upon that point before the witness concludes his testimony.

The allowance of such a change in the usual course of a trial is a matter of discretion with the court.

Where the whole evidence in a case presents a disputed question of fact, whether the contract were parol or reduced to writing, evidence may be received both as to that precise question, and as to the verbal declarations and acts of the parties, which are claimed to have consti-

Jenness *v.* Berry.

tuted the alleged parol contract, and also as to the contents of the alleged written instrument; and then it may be left to the jury to say whether the contract were written or parol, with instructions that, if they first find that it was reduced to writing, they must afterward, in determining the terms of the contract, consider only that part of the evidence which tends to show the contents of such writing.

In a real action one of several defendants who has filed a disclaimer, which has been accepted, is a competent witness for the other defendants, no special interest or privity being shown.

A judgment obtained on a note by a party under whom the demandant claims through a levy on the execution, is not conclusive evidence against a third party, to show that the person recovering judgment was in fact a creditor at the time when the suit was commenced, or at the time when the title under the judgment was acquired.

But such a judgment cannot be impeached either by the debtor or any other person, by showing that the contract sued on was made on the Lord's day.

If a party, who has a prior claim upon land, under a levy, is informed of a subsequently acquired title by deed, but takes no present measures to interfere with a possession held under the deed, he is not thereby barred from thereafter asserting his rights to the land as a judgment creditor.

But if he, for a consideration, has made any agreement confirming the deed, or any statement or agreement on the faith of which the grantee in such deed has been led to take special action ; or if he has otherwise acted, so that the assertion of his rights would operate as a fraud upon such grantee, then such judgment creditor's claim upon the land would cease.

If, however, no consideration passed, and the creditor merely said the deed might stand, and no one has taken special action in reliance upon such declaration, or if he can retract, without his retraction working a fraud, there being no consideration, he is at liberty to retract.

WRIT OF ENTRY, dated July 15, 1843, for a tract of land situate in Strafford. George Berry, one of the defendants, filed a disclaimer, which was accepted. Benjamin Berry, the other defendant, pleaded the general issue. The plaintiffs showed an attachment of the demanded premises, together with other lands, on the 25th of March, 1841, upon a writ in favor of Alexander S. Berry against said George Berry, a judgment duly recovered in the suit

at the January term of the court of common pleas in 1842, and an execution duly issued and extended upon the demanded premises. The writ and judgment were founded upon a note given by George Berry to Alexander S. Berry for $150 and interest, dated November 9, 1835. The plaintiffs then showed that George Berry was in possession of the land at the time of the extent, which was made February 12, 1842, and had been for a long time before. They then introduced a deed from Alexander S. Berry to them, dated June 24, 1843, conveying the demanded premises.

The defendant, Benjamin Berry, introduced a copy of a quitclaim deed from George Berry to him and his brother Andrew, dated March 15, 1836, conveying the said George Berry farm, containing about fifty-four acres, of which the demanded premises constituted a part; also a copy of a quitclaim deed from Andrew to him, conveying all said Andrew's share or interest in the farm, the originals of both of said deeds having been proved to be lost.

It appeared that Alexander, Benjamin and Andrew, were all sons of said George, and that Alexander married a sister of the plaintiff. To show the consideration of the deed of March 15, 1836, the defendant introduced Andrew Berry, who proceeded to state the amount paid by himself and brother, and also said that they agreed to pay their father's debts. On the suggestion of the plaintiff's counsel, while the direct examination was going on, that the witness was stating what was in a written contract, the defendant's counsel asked him if the contract was in writing, and he said it was not. The counsel for the plaintiff then claimed the privilege of cross-examining the witness, whether the contract was in writing, and also of introducing other witnesses at that time upon that point, before the direct examination of the witness was completed. The court decided that the direct examination should first be closed, to which the plaintiff's

counsel excepted, and the witness proceeded to testify at length in the case. After the direct examination was completed, the plaintiff's counsel passed to the court an affidavit by the defendant, which had been taken in the process of the suit, tending to show that the contract for the payment of the father's debts was in writing, and contended that the testimony of said Andrew, so far as it related to the contract, should be ruled out. Upon its being intimated by the court that the tendency of the affidavit was to show a written contract, the defendant introduced, without objection, evidence to show that the contract was not in writing, or if so, that it was at the same time with the deed, and lost with it. The court then decided that the evidence of Andrew was admissible to show what the contract was, it appearing that if it ever had an existence it was then lost, to which the plaintiff excepted. The defendants also introduced other witnesses, who testified that they were present when the deed of March, 1836, was made, and heard the bargain between the parties, and stated what it was. To this evidence the plaintiffs excepted, contending that the court should require the defendants to produce, as better evidence, the person who drew the writings.

George Berry was called as a witness by the defendants, and was objected to by the plaintiffs. A general release was executed by the defendants to the witness, and he was admitted. The plaintiff, however, contended that his interest was such that the release did not reach it. On his *voir dire* he testified that he had no interest in the event of the suit that he knew of; that he had helped cut the hay on the land in dispute for the last two or three years, and that he had a cow and three or four sheep kept on the place, and that he expected, unless the land should be recovered from his son by the plaintiffs, to have part of the crops hereafter.

The defendant also introduced evidence tending to show

that the note on which the judgment, *Alexander S. Berry* v. *George Berry*, was founded was fraudulent; to which the plaintiffs excepted, contending that the consideration of that judgment could not be inquired into. The exception was overruled and the evidence admitted.

There was some evidence tending to show that said note was made on Sunday. On this point the court charged the jury, that as the law stood at the time this note was given, a note made on the Lord's day would be void, unless it was subsequently re-delivered and ratified; that if this note was re-delivered and ratified, about which there could probably not be any doubt, the objection on account of its being made on Sunday was removed; to which the plaintiffs excepted.

There was also evidence tending to show, that not long after the transactions of March, 1836, Alexander S. Berry was told what had been done, and acquiesced in it. On this point the court charged the jury that if they were satisfied that Alexander S. Berry knew all the circumstances connected with the transfer of the property in March, 1836, and agreed to that transfer, and acquiesced in that transaction and bargain, and consented that Benjamin and Andrew should hold and have the land, his claim upon the land would cease, and the plaintiffs would not be entitled to recover in this suit; to which the plaintiffs excepted.

The jury returned a verdict for the defendants, and the plaintiffs moved for a new trial.

*Christie*, for the plaintiffs, cited 20 Pick. 285, *Miller* v. *Baker;* 5 N. H. Rep. 355, *McNiel* v. *McClintock;* id. 420, *Southerin* v. *Mendum;* 7 N. H. Rep. 475, *Montgomery* v. *Dorion;* 8 N. H. Rep. 334, *Burnham* v. *Wood;* 9 N. H. Rep. 400, *Straw* v. *Jones;* Greenl. Ev. 401, 432; 1 Wheat. 6, *Davis* v. *Eaton;* 6 Law Reporter 68, case of *Daniel Marsh,* and cases cited there; 2 Esp. 637, *Watson*

v. *Threlkeld ;* 1 Camp. 245, *Robinson* v. *Nahon ;* 1 B. & P. 293; 3 Pick. 38, *Chapman* v. *Searle ;* 12 Wend. 57, *Sayles* v. *Smith ;* 5 N. H. Rep. 452, *Tufts* v. *Hayes ;* 1 Greenl. Ev., sec. 275; 1 Phil. Ev. 753; 2 Stark. Ev. 544; 2 Cow. & Hill's Phil. Ev. 1467; id. 39; 9 Wheat. 486, 582, 597; 1 Pet. 591, 599, 600; 2 Dall. 214; 5 Watts 45, *Boyer* v. *Smith.*

*W. A. Marston, & J. Bell,* for the defendants, cited 2 Stark. 744; 3 D. & E. 15, *Bent.* v *Baker ;* 7 D. & E. 62; 2 Stark. 74; 7 Mass. 255; 2 N. H. Rep. 192, *Burrill* v. *West ;* id. 443, *Thrasher* v. *Haines ;* 22 Pick. 381; 2 Met. 135; 3 D. & E. 75; 7 Cranch 271, *Wood* v. *Davis ;* 6 N. H. Rep. 521, *Morse* v. *Childs ;* 11 N. H. Rep. 201, *Thompson* v. *Sanborn ;* 4 Met. 58, *Potter* v. *Tyler ;* 1 Greenl. Ev. 479, 518; 7 Pick. 498, *Moody* v. *Rowell ;* 2 Stark. Cas. 23, 49; 6 N. H. Rep. 346, *Hamblett* v. *Hamblett ;* 10 N. H. Rep. 369, *Deerfield* v. *Northfield.*

PARKER, C. J. The ruling of the court respecting the examination of the witness and the prevention of the party from introducing evidence to show that the contract was in writing, before the examination of the witness was closed, was according to the common, course of practice. The witness denied that the contract was reduced to writing, and on that state of the evidence his testimony respecting its terms was competent. If the plaintiffs desired to controvert that testimony they would have an opportunity to do it at the usual time for cross-examination, and subsequently, by the introduction of testimony on their part. But the court could not be required to change the usual course of the trial, by separating that question from the rest of the case, and determining it by an interlocutory decision preliminary to further proceedings. It was a matter within the discretion of the court how to proceed. If the testimony had appeared suspi-

cious the plaintiffs might have been permitted to cross-examine upon that point before the witness proceeded to state the terms of the agreement, but the plaintiff had no right to require that this should be done.

After the plaintiff had introduced evidence to show that the contract, respecting which Andrew Berry testified, was in writing, the court decided that the evidence of the witness was admissible to show what the contract was; because, as the case finds, it appeared that the contract, if it ever had existence, had been lost. This ruling did not perhaps make the necessary distinction between evidence of a contract which has not been reduced to writing, and evidence of a written contract which can not be produced. In the first class of cases the proof of the contract rests in evidence of the verbal declaration of the parties and of their acts. In the other it consists in showing the existence of a written contract and its loss, and then introducing proof of the contents of the written instrument. If it appear that the contract has been reduced to writing, that is to be produced, if to be had. If not, secondary proof may be offered, on showing its loss. But that secondary proof is not the verbal declarations of the parties in making their agreement, but the contents of the instrument which they executed. This may be done in various ways. The declarations of the adverse party respecting the contents may be admissible. But the same rule which requires the production of the instrument, if to be had, requires, as secondary proof, evidence, not of the negotiation which resulted in the written contract, but the terms of the writing itself. It would be a dangerous temptation to parties to lose their papers, if that would authorize the admission of such evidence as might have been admissible if the contract had never been reduced to writing.

In cases like the present, where there is, upon the whole evidence, a disputed question of fact whether the contract was reduced to writing, it may be necessary to receive

evidence of both descriptions, and to submit that question to the jury, with instructions, if they find the contract was reduced to writing, to consider only that part of the evidence which tends to show the contents of the writing, in determining the terms of the contract.

It does not appear that George Berry had any such interest as should have excluded him from testifying. After the acceptance of his disclaimer he was entitled to a discharge, and might be regarded as no longer a party to the suit. By declining to take issue upon the disclaimer, the plaintiffs admitted that he was not a proper party. There is nothing to show that he would gain or lose by the event, nor does it appear that the verdict or judgment could be evidence for or against him in any subsequent action. He is not shown to be in privity, so as to be concluded by the verdict and judgment in any action for mesne profits.

The judgment obtained by Alexander S. Berry against George Berry, upon the note, was not conclusive evidence against the defendant that the former was a creditor of the latter at the date of the conveyance, nor was it conclusive evidence that he was a creditor at the time when the suit was commenced. It might have been commenced fraudulently, for the very purpose of avoiding the deed, when in fact no debt existed.

But the judgment could not be impeached by showing that the note was made on the Lord's day. That did not show that a debt did not exist, nor that the suit was fraudulent. If the note was made on Sunday, contrary to the provisions of the statute, the maker might allege that he was not bound by it; but if he did not see fit to make that defence, no one could make it for him. *Smith* v. *Bean*, 15 N. H. Rep. 577. After the judgment he could no longer take that objection himself. On the case before us it is perhaps hardly probable that the jury found against the plaintiff upon that point, but they might have done so. The jury were instructed that, as the law stood at that

time, the note, if made on Sunday, was void, unless redelivered; and although they were told that on the evidence there could not probably be much doubt that it was so, they may have had a different view of the evidence from that taken by the court.

Upon the last point there is an omission to state particularly the circumstances upon which the instruction was based. It does not appear what agreement was made or what constituted the acquiescence; and the instruction may therefore be regarded as too broad on the facts stated, although it may have been warranted by those actually in evidence. If there was an acquiescence merely by taking no present measures to interfere with the possession then held under the deed, that would not bar or estop A. S. Berry from afterwards asserting his rights as a creditor, if his debt was not paid. If he made any agreement confirming the deed upon any consideration, or any statement or agreement to that effect, upon the faith of which the grantees acted as they would not otherwise have done, or under such circumstances that his afterwards asserting his rights as a creditor, if permitted, would operate as a fraud upon them, then the instruction was correct. If, without any consideration, he said the conveyance might stand, and they had not acted upon that in a manner different from what they otherwise would have done; or if the circumstances were such that, there being no consideration, he could retract what he had said, without the change operating to defraud them, then he was at liberty so to do.

*New trial granted.*